IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BOBBY LEE ROBERTSON,**
**ADC #121746**                                                                                   **PLAINTIFF**

v.                            Case No. 4:20-cv-1171-KGB-ERE

**DEXTER PAYNE,** *et al*.                                                                **DEFENDANTS**

**ORDER**

Before the Court is defendants Dexter Payne, James Gibson, James Shipman, Brandon Carroll, Floria Washington, and Jonathan Wiscaver's ("ADC Defendants") motion for summary judgment (Dkt. No. 163). Plaintiff Bobby Lee Robertson timely filed a response to motion for summary judgment (Dkt. No. 172). United States Magistrate Judge Edie R. Ervin issued a Recommended Disposition regarding the motion for summary judgment (Dkt. No. 173). Mr. Robertson timely objected to Judge Ervin's Recommended Disposition (Dkt. No. 178). After careful consideration of the Recommended Disposition, the objections, and a *de novo* review of the record, the Court concludes that the Recommended Disposition should be, and hereby is, approved and adopted in its entirety as this Court's findings in all respects (Dkt. No. 173). The Court writes to address Mr. Robertson's objections.

I.    **Background**

ADC Defendants filed a statement of undisputed material facts with their motion for summary judgment (Dkt. No. 165). Mr. Robertson responded with his own statement of undisputed material facts (Dkt. No. 172-1). Mr. Robertson did not directly contest any of ADC Defendants' facts, but he did repeat some of ADC Defendants' facts and stated additional facts (*Id.*).

The parties agree that, at all times relevant to this lawsuit, Mr. Robertson was an inmate at the Varner Supermax Unit in Grady, Arkansas (Dkt. Nos. 165, ¶ 1; 172-1, ¶ 1).  On February 20, 2019, Mr. Robertson attended a classification hearing before the Classification Committee, which was a "60-day" review hearing (Dkt. Nos. 165, ¶ 2; 172-1, ¶ 3).  The Classification Committee members on February 20, 2019, were James Gibson, Floria Washington, Jonathan Wiscaver, and Brandon Carroll (Dkt. Nos. 165, ¶ 3; 172-1, ¶ 4).  The classification hearing was held to consider plaintiff's restrictive housing assignment (Dkt. Nos. 165, ¶ 4; 172-1, ¶ 5).  On February 20, 2019, the Classification Committee unanimously voted that plaintiff remain in restrictive housing (Dkt. Nos. 165, ¶ 5; 172-1, ¶ 6).

ADC Defendants state that "[t]he Classification Committee chose to keep [p]laintiff in restrictive housing because he:  (1) posed a threat to the institution, himself, and others; (2) had an extensive number of 2 convictions for indecent exposure; and (3) threatened staff on January 12, 2019." (Dkt. No. 165, ¶ 6 (citing Dkt. No. 2, at 11, 18)).  Mr. Robertson states that the Classification Committee justified its decision to keep him in restrictive housing by citing "threats allegedly made to staff on January 12, 2019, as well as a number of indecent exposures committed by the [p]laintiff, the last of which occurred on August 12, 2018." (Dkt. No. 172-1, ¶ 6; see Dkt. No. 2, at 18).  Mr. Robertson further asserts that "the January 12, 2019 Disciplinary filed against the [p]laintiff [w]as dismissed by the Department of Corrections on January 23rd 2019." (Dkt. No. 172-1, ¶ 6; see Dkt. No. 2, at 24).  The parties agree that the Classification Committee recommended that Mr. Robertson receive his class 1C before being considered for release to the general population (Dkt. No. 165, ¶ 7; 172-1, ¶ 7).

On May 20, 2020, Mr. Robertson received a classification hearing before the Classification Committee (Dkt. Nos. 165, ¶ 8 (citing Dkt. No. 163-3); 172-1, ¶ 12).  The Classification Committee

members on May 20, 2020, were James Shipman, Floria Washington, Brandon Carroll, Samantha Turner, and Rita Lewis (Dkt. Nos. 165, ¶ 9; 172-1, ¶ 13). ADC Defendants assert that, "[o]n May 20, 2020, the Classification Committee unanimously voted for [p]laintiff to be offered placement in the step-down program." (Dkt. No. 165, ¶ 10 (citing Dkt. No. 163-3)). Mr. Robertson notes that the Classification Committee determined that he was to remain in restricted housing, but Mr. Robertson notes that the document submitted by the Classification Committee does not reflect the "reason for him to remain." (Dkt. No. 172-1, ¶ 14; see Dkt. No. 163-3). Mr. Robertson also notes that this decision was approved at the review by the Warden (Dkt. No. 172-1, ¶ 14; see Dkt. No. 163-3).

ADC Defendants assert that Mr. Robertson "refused the step-down offer because he wanted to be immediately placed in Level 3 and given a job." (Dkt. No. 165, ¶ 11 (citing Dkt. No. 2, at 14); see also Dkt. No. 2, at 53–54). ADC Defendants further assert that, on June 10, 2020, Mr. Robertson was advised that he would be removed from the step-down program (Dkt. No. 165, ¶ 12 (citing Dkt. No. 2, at 20)). Mr. Robertson states that he "filed numerous grievances, during his forty (40) plus months in solitary, to Dexter Payne as well as presenting letters to other ADC staff to include, Mr. Payne, Solomon Graves, Dale Reed and Warden Gibson regarding his continued placement in solitary confinement, the lack of due process regarding disciplinaries and other violations of his constitutional rights." (Dkt. No. 172-1, ¶ 15 (citing Dkt. No. 2, at 13–15)). The Court notes that the record contains multiple grievances, all of which were filed after February 20, 2019 (Dkt. No. 2 at 27, 31, 34, 37, 41, 46, 50, 53, 57, 61, 68). Some were filed after May 20, 2020 (Dkt. No. 2, at 53, 57, 61, 68). Mr. Robertson asserts that he "was subsequently removed from the step[-]down program, denied job placement at Varner Supermax Unit and later transferred to Tucker Maximum Security Unit" (Dkt. No. 172-1, ¶ 16 (citing Dkt. No. 2, at 10)).

## II. Mr. Robertson's Objections To Judge Ervin's Recommended Disposition

Mr. Robertson's objection to Judge Ervin's Recommended Disposition did not include objections to Judge Ervin's findings regarding sovereign immunity or the corrective inaction claim against defendant Dexter Payne. However, Mr. Robertson did object to Judge Ervin's finding that his due process and retaliation claims do not survive qualified immunity because he failed to state an underlying constitutional violation (Dkt. No. 173, at 5–11). The Court will address his objections regarding the due process and retaliation claims.

### A. Objections To Due Process Claim

Mr. Robertson makes multiple objections to the Recommended Disposition's conclusion regarding his due process claim, but each objection fails because the record does not establish that Mr. Robertson's restricted housing places a liberty interest at issue. First, Mr. Robertson states that ADC Defendants failed to demonstrate that no genuine issue of material facts exists "as to the existence of a due process right" and the underlying reasons for his classification decisions (Dkt. No. 178, at 2). In particular, Mr. Robertson states that ADC Defendants "presented no evidence . . . that the Plaintiff was a threat to the institution" and "presented no additional disciplinaries or violations or by affidavit of any Defendant." (Dkt. No. 178, at 2). Second, Mr. Robertson states that the Recommended Disposition does not adequately consider that the January 12, 2019, disciplinary was dismissed prior to the February 20, 2019, reclassification and that defendants "were all aware" of this fact (Dkt. No. 178, at 3). Third, Mr. Robertson objects to the use of *Dixon v. Brown*, 38 F.3d 379 (8th Cir. 1994), and *Daniels v. Ferguson*, No. CIV. 06-5205, 2008 WL 698485 (W.D. Ark. Mar. 13, 2008). Specifically, Mr. Robertson states:

> The Plaintiff would disagree with a caselaw, [sic] regarding whether being placed in segregation is an atypical and significant hardship, having spent years in solitary confinement however, Plaintiff's complaint does not rely simply upon his placement in segregation, but in fact, that he was denied his due process rights

4

> which should be afforded to him in a review of his continued placement in segregation and further that that disciplinary was known to be dismissed prior to the hearing. In other words, it is not whether he should be placed in segregation, but whether he is afforded due process to rebut or counter allegations used by the classification committee prior to it issuing a decision on his reclassification, especially considering that two of the three reasons used to continue his solitary confinement, in both February and May, were either moot or unsubstantiated.

(Dkt. No. 178, at 5–6).

As stated in the Recommended Disposition:

> To prevail on a Fourteenth Amendment due process claim, a prisoner "must first demonstrate that he was deprived of life, liberty, or property by government action." *See Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). Here, the due process claim must be based on the denial of a liberty interest. Absent a constitutionally protected liberty interest, Mr. Robertson has no cognizable claim for relief under § 1983.

(Dkt. No. 173, at 6). Mr. Robertson's due process claim must fail because the record does not contain facts demonstrating that his classification or placement in restricted housing amount to liberty interests. The following standard governs whether a prisoner's experience in restricted housing amounts to a liberty interest:

> In order to determine whether an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could "expect to experience as an ordinary incident of prison life." *Beverati [v. Smith]*, 120 F.3d [500,] 503. We do not consider the procedures used to confine the inmate in segregation. *Kennedy [v. Blankenship]*, 100 F.3d [640,] 643.
>
> We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship. *Id.* at 642.

*Phillips*, 320 F.3d at 847. Mr. Robertson failed to provide evidence that the conditions of his restricted housing were an atypical and significant hardship compared to what he could expect to experience as an ordinary incident of prison life. While Mr. Robertson's filing briefly remarks on how restricted housing relates to his quality of life, medical status, ability to work out, ability to attend educational and vocational programs, ability to associate with other prisoners and engage

5

in recreational activities, ability to attend religious services, access to the law library, and ability to visit with family, he does not provide any details about the extent or duration of these impacts (Dkt. No. 2, at 15). Further, the record presents no evidence regarding the extent or duration of these issues. In this case, there is no record evidence to support his claim of an atypical and significant hardship regarding Mr. Robertson's experience in restricted housing, and therefore, there is no liberty interest at issue. Without a liberty interest at issue, Mr. Robertson's due process claim must fail. This claim also fails for the additional reasons cited by Judge Ervin in the Recommended Disposition.

### B. Objection To Retaliation Claim

Mr. Robertson also objects to the Recommended Disposition's conclusions regarding his retaliation claim. Mr. Robertson states that he:

> . . . objects to the court[']s finding that a jury could not find that a causal connection between the filing of his grievances and the use of these trumped up charges in the classification hearing and certainly placement for continued placement in solitary confinement definitely would chill a prisoner of ordinary firmness from engaging in protected activities.

(Dkt. No. 178, at 6). However, as stated in the Recommended Disposition:

> To establish a causal connection between his protected speech and the adverse action, Mr. Robertson must show "that the protected activity was a 'but-for cause' of the adverse action, meaning that the adverse action against [him] would not have been taken absent a retaliatory motive." [*De Rossitte v. Correct Care Solutions, LLC.*, 22 F.4th 796,] 804 (citation and quotation omitted).

Judge Ervin's Recommended Disposition relies on *De Rossitte* to find that Mr. Roberton's retaliation claim fails to show a "but-for" cause of the adverse action taken by ADC Defendants. In *De Rossitte*, the plaintiff's retaliation claim failed because, despite filing prison grievances against the defendants, the plaintiff cited "no evidence, either direct or indirect, linking any adverse action to the filing of his prison grievances." *De Rossitte*, 22 F.4th at 804. Similarly, Mr. Robertson

6

failed to provide any evidence that connects the grievances in the record—all of which were received after the February 20, 2019, Classification Committee hearing—to a retaliatory motive behind ADC Defendants' actions at either the February 20, 2019, Classification Committee hearing or the May 20, 2020, Classification Committee hearing (Dkt. No. 2, at 27, 31, 34, 37, 41, 46, 50, 53, 57, 61, 68). Without evidence connecting Mr. Robertson's grievances to any retaliatory motive by ADC Defendants, Mr. Robertson's retaliation claim must fail.

### III. Conclusion

For the foregoing reasons, and the reasons stated in the Recommended Disposition, the Court concludes that the Recommended Disposition should be, and hereby is, approved and adopted in its entirety as this Court's findings in all respects (Dkt. No. 173). Therefore, the Court grants ADC Defendants' motion for summary judgment and dismisses with prejudice Mr. Robertson's claims (Dkt. No. 163).

It is so ordered this 11th day of March, 2024.

_____
Kristine G. Baker
Chief United States District Judge